IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANCIS T. GREISER, JR.** **Plaintiff,** v. **JOANNE L. DRINKARD,** *et al.* **Defendants.** | **CIVIL ACTION NO. 18-5044** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                             February 2, 2021

Plaintiff Francis T. Greiser, Jr. filed this action *pro se* against his sister, Joanne Drinkard and her husband, Paul Drinkard, alleging state-law claims of tortious interference with contract, wrongful conveyance and conversion, unjust enrichment, tortious interference with a business relationship, fraudulent concealment and misrepresentation, tortious interference with an expectancy, defamation, and intentional infliction of emotional distress.[1] Defendants have moved to dismiss the Amended Complaint. Plaintiff opposes the motion and seeks leave to file a Second Amended Complaint to add as Defendants his mother, Marian Greiser, and the estate of his late father, Francis Greiser, Sr.[2] For the reasons set forth below, the motion to dismiss will be granted and the motion for leave to file a Second Amended Complaint will be denied.

I.   **FACTUAL ALLEGATIONS**

   A.   **Allegations in the Amended Complaint**

Plaintiff alleges the following facts. Between 2010 and 2014, Plaintiff had a loving relationship with his parents, living in Units 210 and 214 of the same condominium complex,

---

[1] Federal jurisdiction is premised on diversity of citizenship; the case was transferred from the United States District Court for the Southern District of Florida.

[2] Pl.'s Mot. for Leave, Exh. A, March 9, 2020 [Doc. No. 71].

Whittier Towers, in Florida.[3] They socialized frequently, mainly during the winter months, as his parents would return to their home in Pennsylvania in the spring.[4] In 2014, Plaintiff's father suffered a stroke, and was in and out of the hospital for months.[5] After a visit to his parents in January 2015, Plaintiff received an e-mail from his mother in March 2015, accusing him of trying to break into the family's safe.[6] Plaintiff alleges that his sister falsely accused him to their mother.[7] His sister also allegedly gained power of attorney and had her father sign over his assets to her, and engaged in other financial misdeeds.[8]

Plaintiff's father died in May of 2016, and Plaintiff alleges that at the funeral family members told him that his sister was telling people that he had attempted to break into his parents' safe. Plaintiff later took a polygraph examination to demonstrate that he had not broken into the safe.[9] In late May and early June 2016, Plaintiff sent two demand notices to his sister to retract her statements.[10] They went unanswered.[11]

At about this same time, Plaintiff's brother, Robert Greiser, informed him that their sister was pressuring their mother into selling both units in Whittier Towers.[12] Plaintiff alleges that he

---

[3] Pl.'s Am. Compl., July 2, 2018 [Doc. No. 8] at ¶¶ 49-50.

[4] *Id.* at ¶ 51.

[5] *Id.* at ¶ 52.

[6] *Id.* at ¶ 59.

[7] *Id*. at ¶ 65.

[8] *Id.* at ¶¶ 71, 80-90.

[9] *Id.* at ¶¶ 102-105. Plaintiff then took a second polygraph test about the renovations of the Florida condominium. *See id*. at ¶ 106.

[10] *Id.* at ¶¶ 108-09.

[11] *Id.* at ¶ 110.

[12] *Id.* at ¶¶ 114-15.

and his parents had orally contracted for both living rights and future interest in Unit 214 in exchange for unpaid renovation work.[13] With regard to Unit 210, Plaintiff alleges that in 2012, he and his parents began a lawsuit against Whittier Towers, regarding his ownership of the unit, which was eventually resolved with Plaintiff's name being removed from the proprietary lease for a payment of $60,000.[14] Plaintiff also alleges that his sister wrested control of the family's daycare business away from him and his brother.[15]

### B. Additional Allegations in the Proposed Second Amended Complaint

In the proposed Second Amended Complaint, Plaintiff adds allegations that his father told him about a new will in 2012 that left Plaintiff some property in Florida.[16] Plaintiff accuses his sister of changing the will in 2015 and signing everything over to her.[17] During probate proceedings in Pennsylvania state court, the Orphans' Court Division of the Delaware County Court of Common Pleas determined that there was no 2012 will, and that both the penultimate will executed in 2000 and the final will executed in 2015 left all assets to the surviving spouse, Plaintiff's mother.[18] Plaintiff alleges that his sister hid assets from the probate court and that he was supposed to be left some sort of expectancy.[19] Plaintiff maintains that his sister fraudulently

---

[13] *Id.* at ¶ 134.

[14] *Id.* at ¶ 188.

[15] *Id.* at ¶¶ 194-98.

[16] Pl.'s Mot. for Leave, March 9, 2020 [Doc. No. 71] Exh. A (Proposed Second Amended Complaint) at 5.

[17] *Id.* at 6.

[18] *Id.* at 10.

[19] *Id.* at 7-9.

3

transferred assets of the estate.[20] Finally, Plaintiff also includes a claim alleging a breach of a written contract regarding an entitlement to proceeds from the sale of Whittier Unit 210.

## II. LEGAL STANDARDS

For a complaint to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21] This occurs when the claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] A court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [plaintiff]."[23] A court is not required to accept legal conclusions as factual allegations; to overcome a motion to dismiss, the complaint must show "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."[24]

Federal Rule of Civil Procedure 15 guides the amended pleading standard. Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[25] Additionally, Rule 15(d) provides that "[o]n motion or reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that

---

[20] *Id.* at 5.

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[22] *Id.* (quoting *Twombly*, 550 U.S. at 556).

[23] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[24] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[25] Fed. R. Civ. P. 15(a)(2).

4

happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in a claim or defense."[26]

Moreover, when adding defendants, a plaintiff must also satisfy Federal Rule of Civil Procedure 20, which provides that "[p]ersons . . . may be joined in one action as defendants if: any right to relief is asserted against them jointly [or] severally . . .with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."[27]

Leave to amend should be denied if amendment would be futile or inequitable. Amendment would be futile if "the amended complaint would not survive a motion to dismiss for failure to state a claim."[28] It is inequitable to allow amendment where there has been "undue delay, bad faith, dilatory motive, [or] unfair prejudice."[29] Finally, "pro se pleadings should be construed liberally," but still must meet the applicable legal standards.[30]

### III. DISCUSSION

To the extent that claims in the Amended Complaint and proposed Second Amended Complaint overlap, the Court will analyze the claims together, and will address separately the proposed new claims against new Defendants in the motion to amend.

---

[26] Fed. R. Civ. P. 15(d).

[27] Fed. R. Civ. P. 20(a)(2)(A). Federal Rule of Civil Procedure 21 states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."

[28] *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citing *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Circ. 2010); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[29] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

[30] *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972)).

### A. Claims concerning Whittier Units 210 and 214

In the Amended Complaint, Plaintiff alleges claims against his sister and her husband for tortious interference with a contract, wrongful conveyance and conversion, unjust enrichment, and tortious interference with a business relationship. These claims arise from an alleged oral contract between Plaintiff and his parents for future ownership rights of Unit 214 in exchange for Plaintiff performing unpaid renovation work, and a similar claim for Plaintiff to renovate and then move into Unit 210.[31]

Defendants argue that the Florida statute of frauds bars these claims.[32] Under this statute, "no action shall be brought . . . upon any contract for the sale of lands . . . or of any uncertain interests in or concerning them, or any lease period longer than 1 year…unless the agreement or promise . . . shall be in writing and signed by the party to be charged therewith."[33] A party cannot avoid this requirement by reformulating a breach of contract claim into one for fraud, and promissory estoppel is not an exception to the statute of frauds.[34] Plaintiff argues that "it is well established in Florida that part performance will remove an oral contract from the statute of frauds and enable it to specifically enforced in equity."[35] While this is correct, "[t]he doctrine of part performance to excuse a failure to comply with the statute of frauds is not available in

---

[31] Pl.'s Am. Compl. July 2, 2018 [Doc. No. 8] at 35.

[32] Def.'s Mot. to Dismiss, Mar. 10, 2020 [Doc. No. 73] at 11.

[33] Fla. Stat. § 725.01. As the property is in Florida, there is no dispute that Florida law applies to these claims.

[34] *Stamer v. Free Fly, Inc*, 277 So.3d 179, 181–82 (Fla. Dist. Ct. App. 2019).

[35] Pl.'s Reply to Def.'s Response to Pl.'s Mot. for Leave, Apr. 6, 2020 [Doc 80] at 8.

Florida to actions solely for money damages."[36] Plaintiff has not sought equitable relief, and because the property has been sold, equitable relief would likely not be available.

To the extent that the claim for tortious interference with a contractual or business relationship is not barred by the statute of frauds,[37] Plaintiff has failed to state a claim. The tort requires "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result" of the interference.[38] Plaintiff has not alleged the existence of a valid contract, and has alleged only in conclusory terms that any interference by Defendants was unjustified given the family relationships among the parties. Claims relating to Unit 214 and Unit 210 in the Amended Complaint will be dismissed, and the motion for leave to amend will be denied as to any tort claims.[39]

### B. Claims Concerning the Will of Francis Greiser, Sr.

Plaintiff asserts claims for fraudulent concealment and misrepresentation, and for tortious interference with an expectancy. The fraudulent concealment claim, which alleges that his sister failed to list all of their father's assets to the Orphans' Court, is barred by the probate exception to federal jurisdiction.[40] The probate exception applies when a "claim for relief requires a federal

---

[36] *Wharfside at Boca Pointe, Inc. v. Superior Bank*, 741 So.2d 542, 545 (Fla. Dist. Ct. App. 1999) (*citing Hosp. Corp. of Am. v. Associates in Adolescent Psychiatry*, 605 So.2d 556 (Fla. Dist. Ct. App. 1992)).

[37] *See Brace v. Comfort*, 2 So.3d 1007, 1011 (Fla. Dist. Ct. App. 2008).

[38] *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985).

[39] A claim in the proposed Second Amended Complaint for breach of an express contract regarding proceeds from the sale of Unit 210 will be discussed separately below. The tort claims do not concern this alleged breach of contract.

[40] *See* Pl.'s Am. Compl. July 2, 2018 [Doc. No. 8] at 46-49.

court to. . . probate or annul a will."[41] Furthermore, the probate exception bars a district court from determine whether a testamentary document is invalid.[42] Thus this Court cannot adjudicate claims relating to the will and the probate assets.[43]

To state a claim for tortious interference with an expectancy under Pennsylvania law, a plaintiff must allege "(1) [t]he testator indicated an intent to change his will to provide a described benefit for plaintiff, (2) [t]he defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will, (3) [t]he defendant was successful in preventing the execution of a new will; and (4) [b]ut for the defendant's conduct, the testator would have changed his will."[44] Plaintiff alleges the family's daycare business was supposed to be left to both him and his sister as an inheritance, but in 2016 his sister changed their father's will and persuaded their parents to sign over all business holdings to her.[45] However, as Plaintiff acknowledges, the Orphans' Court determined that the final will was written in 2015 and left all assets to the surviving spouse, Plaintiff's mother.[46] There are no plausible allegations that any other disposition of assets was contemplated.[47]

---

[41] *Rothberg v. Marger*, No. 11-5497, 2013 WL 1314699, at *5 (D.N.J. Mar. 28, 2013) (citing *Three Keys Ltd. v. SR Utility Holding Co.,* 540 F.3d 220, 227 (3d Cir. 2008).

[42] Id at *7 (citations omitted).

[43] In addition to the probate exception, the claims likely would be barred by the *Rooker-Feldman* doctrine, as Orphans' Court has ruled on the questions surrounding probate.

[44] *Cardenas v. Schober*, 783 A.2d 317, 326 (Pa. 2001). As the will was probated in Pennsylvania, the parties do not dispute that Pennsylvania law applies to these claims.

[45] Pl.'s Am. Compl. July 2, 2018 [Doc. No. 8] at 5, 50.

[46] *See* Def.'s Mot. to Dismiss, Mar. 10, 2020 [Doc. No. 73] at 8.

[47] *See id.*; *see also Cardenas*, 783 A.2d at 326.

Plaintiff also alleges that he has an interest in a $400,000 account that his father left specifically for his mother. This interest stems from Plaintiff's belief that Defendants used this money for their own personal use.[48] Since his siblings allegedly used some of the money for personal use, Plaintiff asserts that he is also entitled to some of the money in the account. Further, Plaintiff believes he is entitled to a portion of this money because Defendants were the "actual and proximate cause for a breach of contract that dictated that those proceeds were to go to mother, or in the alternative be shared equally between all the Greiser children."[49] Plaintiff cannot state a claim, as under the allegations he has raised, the money put aside was for his mother, not him. He has no legal entitlement to this money and does not state a claim upon which relief may be granted.

The proposed Second Amended Complaint also asserts claims for intentional interference with an expectancy of inheritance or gift, civil fraud, and unjust enrichment. Plaintiff alleges the existence of a 2012 will, and speculates, without any factual basis, that his sister "conjured up the 2015 Will" and hid assets as an attempt to defraud the Orphans' Court. As stated above, the Orphans' Court has already determined that there was a 2000 will and a 2015 will, and that both bequeathed all of the assets to Plaintiff's mother, the surviving spouse. Plaintiff cannot relitigate these findings in this Court and has not alleged specific facts to support a claim of fraud or of hidden assets.[50]

---

[48] Pl.'s Am. Compl. July 2, 2018 [Doc. No. 8] at 53.

[49] *Id.* at 54.

[50] *See* Fed. R. Civ. P. 9(b).

9

### C. Defamation Claims

Plaintiff seeks to assert claims for defamation by implication and defamation *per se*. These claims are time-barred under Pennsylvania law.[51] The limitations period to bring a claim for defamation is one year,[52] and begins to run when the defamatory statements are published.[53] The Amended Complaint alleges that "[d]uring 2015 and 2016 . . . Defendants spread false and malicious stories warning family members that they should beware of [Plaintiff], specifically telling third parties that [Plaintiff] was [a] 'sneaky thief.'"[54] Plaintiff does not specify when the comments were made, but does allege that he was made aware of them at his father's funeral in May 2016. Plaintiff filed this action on May 15, 2018; any defamatory statements made in 2015 or 2016 are therefore time-barred.

In the proposed Second Amended Complaint, Plaintiff alleges that he sent multiple cease and desist letters, and that the Defendant "started publication of the false defamatory words on March 15, 2015—that were consistently reported back to the Plaintiff lasting for a period of three years."[55] However, Plaintiff still fails to allege that Defendant made comments after 2016, instead alleging only that other people reported the comments back to him. Thus, amendment would be futile as these allegations cannot overcome the time bar.[56]

---

[51] Plaintiff claims the statements were made in Pennsylvania, and therefore Pennsylvania law applies.

[52] 42 Pa. C.S.A. § 5523(1).

[53] *Glover v. Tacony Acad. Charter Sch.*, No. 18-56, 2018 WL 3105591, at *5 (E.D. Pa. June 25, 2018).

[54] Pl.'s Am. Compl., July 2, 2018 [Doc. No. 8] at 4.

[55] Pl.'s Mot. for Leave, March 9, 2020 [Doc. No. 71] Exh. A at 15.

[56] *See Budhun*, 765 F.3d at 259.

### D. Claim of Intentional Infliction of Emotional Distress

Plaintiff alleges a claim of intentional infliction of emotional distress. It is not clear whether Florida or Pennsylvania law governs this claim, but Plaintiff cannot state a claim under either standard. Under Florida law, "a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe."[57] Pennsylvania law is similar but also requires a showing of physical injury.[58] Plaintiff has not met either standard. He alleges that Defendants' lies and "slander" were so severe that they "shock the conscience and are well outside acceptable social norms."[59] Both Florida and Pennsylvania courts generally follow the Restatement (Second) of Torts, which defines outrageous conduct as that "beyond all possible bounds of decency, and regarded as atrocious, and utterly intolerable in a civilized community."[60] Courts have found extreme and outrageous conduct only in the "most egregious of situations."[61] Plaintiff has not alleged conduct that meets this standard; the claim is essentially coterminous with the allegations of defamation.[62]

---

[57] *Liberty Mut. Ins. Co. v. Steadman*, 968 So.2d 592, 594 (Fla. Dist. Ct. App. 2007). It should be noted that under Florida law, "proof of physical injury or impact is not necessary to sustain an action for the intentional infliction of emotional distress." *Clemente v. Horne*, 707 So.2d 865, 866 (Fla. Dist. Ct. App. 1998).

[58] *John v. Phila. Pizza Team, Inc,* 209 A.3d 380, 384 (Pa. Super. Ct. 2019).

[59] Pl.'s Am. Compl., July 2, 2018 [Doc. No. 8] at 57.

[60] *Gallogly v. Rodriguez*, 970 So.2d 470, 472 (Fla. Dist. Ct. App. 2007) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

[61] *Cheney v. Daily News, L.P.*, 654 F. App'x 578, 583 (3d Cir. 2016) (citing Pennsylvania law); *Steadman*, 968 So.2d at 595 (under Florida law, the court must determine as a matter of law whether the conduct is "atrocious and utterly intolerable in a civilized community" (internal quotation marks and citations omitted)).

[62] The Court notes that the proposed Second Amended Complaint does not seek to assert a claim for intentional infliction of emotional distress.

11

**E. Additional Claims Raised in the Proposed Second Amended Complaint**

Plaintiff's proposed Second Amended Complaint seeks to add claims for abuse of process and wrongful use of civil proceedings against his sister and his mother, Marian Greiser, who is not currently a Defendant, and a claim for breach of contract against his mother and the Estate of Francis Greiser, Sr., which is also not a current Defendant.[63]

*1. Abuse of Process*

Plaintiff alleges that his mother and sister sought a Protection from Abuse order ("PFA") against Plaintiff in Pennsylvania but it was later dropped. Plaintiff states he was in Florida at the time of the filing and there was no reason to file a PFA against him. To claim abuse of process, a plaintiff must allege "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."[64] "Abuse of process . . . focuses on the misuse of [the] civil process . . . to achieve some object other than the legitimate purpose for which it is designed, as opposed to the wrongful initiation of legal proceedings without probable cause."[65] Furthermore, "[i]n support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process . . . there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."[66] More simply stated, "the gist of an action for abuse of process is the improper use of process after it has been

---

[63] Pl.'s Mot. for Leave, March 9, 2020 [Doc. No. 71] Exh. A at 28-39.

[64] *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008).

[65] *Douris v. Dougherty*, 192 F. Supp. 2d 358, 366 (E.D. Pa. 2002) (quoting *Muirhead v. Zucker*, 726 F. Supp. 613, 617 (W.D. Pa. 1989).

[66] *Lerner*, 954 A.2d at 1238 (citing *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)).

12

issued."[67] The Supreme Court [of Pennsylvania] has interpreted the tort broadly, making clear that it "will not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process."[68]

These claims bear a striking resemblance to those rejected by the Pennsylvania Superior Court in *Lerner v. Lerner*.[69] In *Lerner,* Helen Lerner alleged that her brother Nathan Lerner harassed her and caused her to fear for her safety.[70] In 2003, Nathan attempted to serve legal papers to Helen's building manager and janitor, creating a scene among tenants in the lobby.[71] In response, Helen filed two criminal reports and subsequently filed for a PFA but, during the hearings, the PFA was withdrawn.[72] Nathan then filed a complaint stating that the PFA was retaliation for his legal efforts and that because he had not had any contact with Helen in over 20 years, there was no way she could have probable cause.[73] He brought claims for abuse of process and wrongful use of civil proceedings.[74] The court concluded that Nathan failed to satisfy the elements of either claim and that he failed to "aver well-pled facts which would permit the conclusion that [Helen] acted in a grossly negligent manner or without probable cause in filing her PFA."[75] The court noted the allegation that there had been no contact between the siblings

---

[67] *Hart v. O'Malley*, 436 Pa. Super. 151, 160, (1994) (quoting *Rosen v. American Bank of Rolla,* 627 A.2d 192 (1993)).

[68] *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 305 (3d Cir. 2003) (citing *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1026 (1987)). *See* 42 Pa. C.S.A. § 8351 (defining existence of probable cause).

[69] 954 A.2d 1229 (Pa. Super. Ct. 2008).

[70] *Id.* at 1232.

[71] *See id.*

[72] *See id.*

[73] *See id.*

[74] *See id.*

[75] *Id.* at 1239.

13

for a period of time did not rule out a finding of probable cause.[76] Moreover, the Superior Court held that Helen did nothing more than carry out the process to its authorized conclusion, so that there was no liability regardless of her intention.[77] Finally, the bald assertion of damages did not sufficiently allege injury.[78]

As in *Lerner*, the present dispute lacks a factual basis for an abuse of process claim. Although Plaintiff asserts that there was no probable cause because he and his sister had not been in contact for eighteen months, a lack of recent contact does not vitiate probable cause. Further, Plaintiff claims the PFA's primary purpose was to "facilitate personal retribution" as well as to hinder his ability to respond to the motion to dismiss and force him to hire counsel and travel to Pennsylvania.[79] However, in the absence of allegations that the process was perverted in some way, these "bad intentions" cannot form a basis for liability. Instead, Plaintiff asserts that it was an attempt to prevent him from filing a timely answer to a motion to dismiss.[80] However, the state court granted Plaintiff an extension of time to respond to this motion and therefore he suffered no harm.[81]

Plaintiff also alleges that he had to fly to Pennsylvania, obtain counsel and defend himself, which caused great "mental pain" in addition to being "humiliated and put under a cloud of suspicion."[82] However, Plaintiff alleges that his attorney advised him that he could appear by

---

[76] *See id.*

[77] *See id* at 1238.

[78] *Id.*

[79] Pl.'s Mot. for Leave, March 9, 2020 [Doc. No. 71] Exh. A at 31, 36-37.

[80] *See id.* at 30.

[81] *See* Order Sept. 24, 2018 [Doc. No. 34].

[82] Pl.'s Mot. for Leave, March 9, 2020 [Doc. No. 71] Exh. A at 39.

14

telephone to contest the jurisdiction rather than traveling to Pennsylvania. Plaintiff alleges that he instead chose to travel to Pennsylvania on his own.[83] Furthermore, Plaintiff never alleges how his reputation was actually damaged, or how any relationships among his neighbors or peers were damaged as a result of the PFA. Plaintiff's only allegation is that he was "put under a cloud of suspicion,"[84] which is insufficient to assert a claim of abuse of process.

### 2. *Wrongful Use of Civil Proceedings*

Plaintiff also seeks to bring claims for wrongful use of civil proceedings against Joanne Drinkard and Marian Greiser based upon the issuance of the PFAs. Wrongful use of civil proceedings occurs when: "(1) [Defendant] acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and (2) The proceedings have terminated in favor of the person against who they are brought."[85] By definition, proceedings are terminated in favor of the person against whom they are brought "by the favorable adjudication of the claim by a competent tribunal."[86] However, "[a] voluntary withdrawal of civil proceedings does not constitute a favorable termination unless the withdrawal was 'tantamount to the unbidden abandonment of a claim brought in bad faith.'"[87] With this in mind, "Pennsylvania courts have concluded that a withdrawal of proceedings is a favorable termination when the withdrawal occurred 'on the eve of trial' and the circumstances indicated

---

[83] Pl.'s Mot. for Leave, March 9, 2020 [Doc. No. 71] Exh. A at 29–30.

[84] *Id.* at 39.

[85] *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 971 (2011) (citing 42 Pa.C.SA. § 8351).

[86] *Id.* at 972.

[87] *Kegerise v. Susquehanna Sch. Dist.*, 325 F. Supp. 3d 564, 582 (M.D. Pa. 2018) (*citing Hyldahl v. Denlinger*, 661 F. App'x 167, 171 (3d Cir. 2016)).

that the withdrawal was a 'last-second dismissal in the face of imminent defeat.'"[88]

Defendants argue that Plaintiff failed to show that the efforts to obtain the PFA lacked probable cause and that proceedings were terminated in his favor.[89] Plaintiff raises substantially the same arguments as in the previous claim, and has not alleged a lack of probable cause.

Plaintiff also alleges that Defendants terminated the proceedings after legal counsel advised them to do so, noting that both Defendants are "unable to establish that the original proceeding against Plaintiff Greiser was instituted and prosecuted on the good faith reliance of legal counsel," and were dropped before Plaintiff had the opportunity to defend himself.[90] In essence, Plaintiff claims that the withdrawal of the PFAs was "last-second" in the "face of imminent defeat."[91] Plaintiff is seeking damages on the grounds that Defendants were the cause of reputational harm, as Plaintiff was "humiliated and put under a cloud of suspicion."[92] Plaintiff has not stated facts to allege defendants acted in a "grossly negligent manner or without probable cause" nor has he alleged facts showing the withdrawal of the PFAs was "last-second" in the "face of imminent defeat," but instead relies only on legal conclusions.[93] Therefore, leave to amend will not be granted as to these claims.

---

[88] *Hyldahl* 661 F. App'x at 171 (citing *Bannar v. Miller*, 701 A.2d 242, 245, 248 (Pa. Super. Ct. 1997)); *see also Majorsky v. Douglas*, 58 A.3d 1250, 1269–70.

[89] Pl.'s Mot. for Leave, March 9, 2020 [Doc. No. 71] Exh. A at 32, 38.

[90] *Id.* at 32, 39.

[91] *See id.*; *see also Hyldahl* 661 F. App'x at 171.

[92] Pl.'s Mot. for Leave, March 9, 2020 [Doc. No. 71] Exh. A at 39.

[93] *See id.* at 38; *see also Lerner*, 954 A.2d at 1237.

*3. Express Breach of Contract*

Finally, Plaintiff seeks to add a claim against his mother and his father's estate for breach of contract, and attaches the alleged handwritten express contract (which is only between Plaintiff and Marian Greiser) as an exhibit.[94] Plaintiff alleges that under this contract he was to receive $60,000 plus one half the proceeds above $60,000 when Whittier Unit 210 was sold, in exchange for him settling the lawsuit he had against Whittier Towers, and removing his name from the lease.[95] Plaintiff alleges that Unit 210 was sold for $75,000.[96] According to a letter from an attorney then representing Plaintiff that is also attached to the proposed Second Amended Complaint, the amount due under this contract is $4,034.[97] This is the only potentially viable claim in the litigation. However, the Court determines that it would be inequitable and unwarranted under Rule 15 or Rule 20 to permit amendment for the purpose of asserting a single claim against new Defendants that would not meet the jurisdictional threshold. Therefore, the Court will deny the motion to amend as to this claim, which Plaintiff may pursue in the appropriate state court.

**IV. CONCLUSION**

For the reasons set forth above, the motion to dismiss will be granted, and the motion for leave to file a second amended complaint will be denied. An order will be entered.

---

[94] *Id.* at 22-24; Doc. No. 72 Exh. 18.

[95] *Id.* at 23.

[96] *Id.* at 24.

[97] Doc. No. 72 Exh. 21.

17